[Cite as *One Church v. Brotherhood Mut. Ins. Co.*, 2024-Ohio-1601.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| One Church, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 23AP-457 |
| v. | : | (C.P.C. No. 21CV-1055) |
| Brotherhood Mutual Insurance Company, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on April 25, 2024

**On brief:** *Stephen C. Lane*, for appellant. **Argued:** *Stephen C. Lane*.

**On brief:** *Collins Roche Utley & Garner, LLC, Richard M. Garner*, and *Lucas P. Baker*, for appellee. **Argued:** *Lucas P. Baker*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, One Church, appeals a decision of the Franklin County Court of Common Pleas granting a motion for judgment on the pleadings in favor of defendant-appellee, Brotherhood Mutual Insurance Company ("BMIC"). For the following reasons, we reverse.

## I. Facts and Procedural History

{¶ 2} The material facts of this matter are not in dispute and are set forth in the pleadings and attachments thereto. One Church owns real property located at 817 N. Hamilton Road, Gahanna, Ohio (the "Property"). BMIC issued an insurance policy (the

"Policy") to One Church which covered the Property for all relevant time periods.[1] A true and accurate copy of the Policy Declarations is attached as exhibit A to One Church's complaint, and a certified copy of the Policy is attached as exhibit 1 to BMIC's amended counterclaim.

{¶ 3} On or about February 24, 2019, buildings located on the Property sustained wind damage. On May 9, 2019, One Church notified BMIC of its claim (the "Claim"). On June 4, 2019, BMIC notified One Church that it would investigate the Claim under a reservation of rights. The Claim was investigated by Matthew L. Westrich, P.E. of Haag Engineering, who inspected the Property on June 20, 2019. Representatives of One Church, including David Domine and Rob Case, were present during the June 20, 2019 inspection. Westrich issued an inspection report on July 25, 2019 (the "Haag Report").

{¶ 4} On August 15, 2019, BMIC sent a letter to One Church enclosing the Haag Report and advising One Church that damage to 42 shingles and the interior of a locker room below those shingles was covered under the Policy and that the remainder of the Claim was not covered under the Policy. On August 23, 2019, BMIC issued a check to One Church for $3,192.67 to repair the 42 shingles and interior locker room damage and advised One Church that the Claim would be closed.

{¶ 5} On January 28, 2020, Domine instructed BMIC to void the $3,192.67 check because One Church was still investigating its options related to the Claim. On April 30, 2020, One Church advised BMIC that it was invoking the appraisal process set forth in the Policy under the Broadened Building and Personal Property Coverage Part endorsement, Form No. BCP-12(B) (4.0). The appraisal provision provides as follows:

### OTHER CONDITIONS

In addition to the policy terms which are contained in other sections of the Commercial Property Coverage, the following conditions apply.

1. **Appraisal:** If **you** and **we** do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by appraisal.

---

[1] The Policy, identified as 34M5A0459353, provided coverage for the period of August 1, 2016 to August 1, 2019.

If either makes a written demand for appraisal, each selects a competent, independent appraiser and notifies the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the property is located to select an umpire.

The appraisers will then determine and state separately the amount of each loss.

The appraisers also determine the actual cash value of covered property items at the time of the loss, if requested.

A written agreement is binding on all parties. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three is binding on all parties.

Each appraiser is paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by **you** and **us**.

If there is an appraisal, **we** retain **our** right to deny the claim.

(Emphasis sic.) (Am. Counterclaim, Ex. 1, Broadened Building & Personal Property Coverage Part – Other Conditions.)

{¶ 6} In accordance with the appraisal provision, One Church and BMIC each selected their own independent appraiser. One Church selected Land Claims Services, L.L.C. to serve as its appraiser; BMIC selected Engle Martin & Associates to serve as its appraiser. On May 28, 2020, the appraisers jointly inspected the Property. On May 30, 2020, the appraisers jointly agreed to the scope of necessary repairs and issued an appraisal award (the "Appraisal Award") in the amount of $313,271.98.[2] On August 3, 2020, BMIC advised One Church that it would issue an initial payment in the amount of $312,371.98 (the Appraisal Award of $313,271.98 less a $900 deductible) and that One Church was

---

[2] The Appraisal Award was issued by agreement of the parties' independent appraisers without submission to an umpire. In signing the Appraisal Award, the appraisers certified that they "have conscientiously performed the duties assigned to us, agreeably to the foregoing stipulations, and have appraised and determined, and do hereby award as the amount of loss * * * $313,271.98." (Am. Counterclaim, Ex. 5.)

entitled to a payment for recoverable depreciation upon completion of the repairs. One Church accepted and negotiated the check from BMIC.

{¶ 7} In October 2020, One Church sought recovery of an additional $206,663.09 for damage not included in the binding Appraisal Award. One Church asserted the additional funds were needed to repair damage that was not known or discoverable during the initial appraisal process and was only discovered by One Church after the repairs identified in the initial appraisal process were commenced. On November 24, 2020, BMIC wrote to One Church enclosing a payment of $39,089.52 for recoverable depreciation and advising One Church that the additional amount sought by One Church would not be paid due to the binding Appraisal Award, which did not list any open or outstanding items. One Church accepted and negotiated the $39,089.52 check from BMIC. On January 25, 2021, One Church sent a letter to BMIC requesting that BMIC reopen the appraisal process to allow the appraisers to assess the additional hidden damage.

{¶ 8} Following BMIC's refusal to pay the additional $206,663.09 or reopen the appraisal process, One Church, on February 19, 2021, filed a three-count complaint against BMIC. One Church first sought a declaratory judgment determining coverage under the Policy. One Church also asserted a breach of contract claim premised on BMIC's alleged failure to pay all sums due under the Policy. Finally, One Church alleged that by failing and refusing to conduct an adequate investigation of One Church's claims and declining its request to set aside the Appraisal Award and reopen the Claim after discovery of the additional damage, BMIC acted in bad faith, thereby breaching the covenant of good faith and fair dealing.[3]

{¶ 9} On April 28, 2021, BMIC filed an answer and an amended counterclaim. BMIC asserted two claims: (1) declaratory judgment determining coverage under the Policy; and (2) reimbursement of $348,268.83 (the total amount paid by BMIC pursuant to the binding Appraisal Award ($351,461.50 less the $3,192.67 to make repairs consistent with the Haag report)) if it was determined that One Church is not barred from setting aside the binding Appraisal Award. On May 26, 2021, One Church filed a reply to BMIC's amended counterclaim.

---

[3] On December 1, 2021, the trial court granted BMIC's unopposed motion to bifurcate and stay One Church's bad faith claim.

{¶ 10} On November 19, 2021, BMIC filed a motion for judgment on the pleadings pursuant to Civ.R. 12(C). BMIC argued the Claim was resolved through the unambiguous and enforceable binding appraisal process set forth in the Policy and that One Church had failed to allege any valid basis such as fraud, mistake, or misfeasance which would warrant setting aside the Appraisal Award.

{¶ 11} One Church filed a memorandum opposing BMIC's motion on December 22, 2021. One Church argued that while it did not explicitly employ the term "mistake" in its complaint, the material allegations set forth in the complaint present facts on which it could be concluded that the two appraisers were mistaken as to the total extent of the loss, as certain damage was hidden and thus undiscoverable until the initial repairs were commenced; accordingly, the Appraisal Award should be binding only as to the initially assessed loss and the appraisal process should be reopened to allow full and complete assessment of the hidden damage. One Church also argued that if BMIC's initial evaluation of the claim ($3,192.67 to repair 42 shingles and interior locker room damage) had not been so "grossly inadequate," it would have been unnecessary for One Church to invoke the appraisal process and BMIC would have been precluded by Ohio Adm.Code 3901-1-54(E)(5) from claiming that the $3,192.67 payment was final and then refusing to consider the additional hidden damage, as the policy limits had not been reached.[4] (Dec. 22, 2021 Memo in Opp. at 5.)

{¶ 12} In its January 10, 2022 reply in support of its motion for judgment on the pleadings, BMIC first asserted One Church's request that the appraisal process be reopened essentially constituted an admission by One Church that it deemed the Appraisal Award "inadequate." (Reply at 1.) BMIC also refuted One Church's mistake argument, contending that One Church failed to plead with particularity the purported mistake as required by Civ.R. 9(B) and that even if it did so plead, the joint inspection and damage valuation conducted by the appraisers was not the product of a mistake. BMIC further asserted that even if there was a mistake, such a mistake could be grounds for One Church setting aside

---

[4] Ohio Adm.Code 3901-1-54(E)(5) provides: "No insurer shall indicate to a first party claimant on a payment draft, check or in any accompanying letter that the payment is final or a release of any claim unless the policy limit has been paid or the first party claimant and the insurer have agreed to a compromise settlement regarding coverage and the amount payable under the insurance contract."

the binding Appraisal Award only if One Church did not bear the risk of the mistake.[5] BMIC asserted that One Church bore the risk of any mistake by failing to adequately inspect the Claim during the appraisal process. Finally, BMIC urged that as a practical matter, allowing reopening of the Claim resolved through the appraisal process would create "an easy, unstable, inefficient path by which insurer and insured alike can litigate and re-litigate again and again resolved claims." (Reply at 5.)

{¶ 13} On July 17, 2023, the trial court issued an entry and order granting BMIC's motion for judgment on the pleadings. The court concluded the Appraisal Award was binding on the parties pursuant to the appraisal provision in the Policy:

> The Court *does not find any evidence of* fraud, misfeasance, or *mistake*. The evidence suggests each party had their own appraisal and conducted full investigations to ascertain the damage. The parties then agreed on the damages amount and BMIC paid them in full. To do what One Church is asking the Court to do, and allow the reappraisal process to reopen without demonstrating fraud or another compelling reason, would undermine the process as a whole. The Court is not willing to do that.

(Emphasis added.) (July 17, 2023 Entry & Order at 4.)

{¶ 14} Having granted BMIC's motion for judgment on the pleadings, the trial court found One Church's remaining claims moot and dismissed the matter in its entirety.

## II. Assignment of Error

{¶ 15} In a timely appeal, One Church asserts a single assignment of error for our review:

> THE TRIAL COURT ERRED BY GRANTING JUDGMENT ON THE PLEADINGS IN FAVOR OF DEFENDANT-

---

[5] BMIC's citation to *Motorists Mut. Ins. Co. v. Columbus Fin., Inc.*, 168 Ohio App.3d 691, 2006-Ohio-5090, (10th Dist.) in support of its contention that One Church bore the risk of mistake made by the appraisers is unavailing at this early stage of proceedings. In *Motorists*, we stated that "a party bears the risk of a mistake when: (a) the risk is allocated to him by agreement of the parties; (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient; or (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so." *Id*. at ¶ 11, citing *Mollenkopf v. Weller*, 10th Dist. No. 03AP-1267, 2004-Ohio-5539, ¶ 15. Upon remand as proceedings progress, if a finding is made that a mistake was made, which pursuant to Ohio law would warrant correction or alteration of the award, the trial court may determine whether the reasoning in *Motorists* applies. We note that *Motorists* involved whether a mutual mistake of fact rendered a contract voidable; and did not address which party, if any, bears the risk of a manifest mistake made by appraisers in assessing damages to an insured's property.

APPELLEE, BROTHERHOOD MUTUAL INSURANCE COMPANY.

## III. Discussion

{¶ 16} In its sole assignment of error, One Church asserts the trial court erred in granting BMIC's motion for judgment on the pleadings. We agree.

{¶ 17} Civ.R. 12(C) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." " 'Civ.R. 12(C) motions are specifically for resolving questions of law.' " *Chen v. Hwang*, 10th Dist. No. 14AP-535, 2014-Ohio-5863, ¶ 17, quoting *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996). An appellate court reviews a motion for judgment on the pleadings de novo, without deference to the trial court's determination. *Id.*, citing *Fontbank, Inc. v. CompuServe, Inc.*, 138 Ohio App.3d 801, 807 (10th Dist.2000). "Thus, we are restricted, as was the trial court, to the allegations in the pleadings, as well as material incorporated by reference or attached as exhibits to those pleadings." *Id.*, citing *Curtis v. Ohio Adult Parole Auth.*, 10th Dist. No. 04AP-1214, 2006-Ohio-15, ¶ 24. Dismissal pursuant to Civ.R. 12(C) is appropriate where the court construes as true the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the non-moving party and finds beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. *Midwest Pride IV* at 570. Thus, Civ.R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law. *Id.*

{¶ 18} " 'An insurance policy is a contract whose interpretation is a matter of law.' " *Laboy v. Grange Indem. Ins. Co.*, 144 Ohio St.3d 234, 2015-Ohio-3308, ¶ 8, quoting *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, ¶ 6. When interpreting an insurance policy, the fundamental goal is to ascertain the intent of the parties. *Id.*, citing *Burris v. Grange. Mut. Ins. Cos.*, 46 Ohio St.3d 84, 89 (1989). The intent of the parties is ascertained from a consideration of the entire policy. *Id.* "Common words in a contract must be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly intended, based upon the face or overall contents of the document." *DN Reynoldsburg, L.L.C. v. Maurices Inc.*, 10th Dist. No. 22AP-683, 2023-

Ohio-3492, ¶ 24, citing *Alexander v. Buckeye Pipeline Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus.

**{¶ 19}** "Generally, a court will not interfere with an appraisal award but, to the contrary, will indulge in every reasonable presumption to sustain it in the absence of fraud, mistake, or misfeasance. A court will not substitute its judgment for that of the appraisers or set aside an award for inadequacy or excessiveness unless it is so palpably wrong as to indicate corruption or bias on the part of the appraisers." *Lakewood Mfg. Co. v. Home Ins. Co. of New York*, 422 F.2d 796, 798 (6th Cir.1970), citing 44 American Jurisprudence 2d, Insurance, Section 1719 (1969).

**{¶ 20}** "The law of Ohio, applicable here, is essentially in line with the general rule. In Ohio, fraud or manifest mistake is a proper legal basis upon which to set aside an appraisal award." *Id.*, citing *Baltimore & Ohio RR. v. Stankard*, 56 Ohio St. 224 (1897). "To constitute manifest mistake, the mistake must be of such character that the arbitrator or appraiser would have corrected it had it been called to his attention; a mistake of judgment is not manifest mistake." *Id.*, citing *Pfleger v. Renner*, 13 Ohio App. 96 (1st Dist.1920). *See also Ruggles v. Ruggles Family L.P.*, 6th Dist. No. H-15-005, 2016-Ohio-1479, ¶ 20 ("a material mistake must be of such a character that the appraiser would have unquestionably altered his award if he had been informed of the mistake"); *Am. Storage Ctrs. v. Safeco Ins. Co. of Am.*, 651 F.Supp.2d 718 (N.D.Ohio 2009) ("the mistake must be of such a character that the appraiser would have corrected it had it been called to his attention").

**{¶ 21}** Though the governing standard is easy enough to describe, the case law applying the standard to an evidentiary record is sparse. Indeed, at oral argument, both parties acknowledged their research had uncovered no case law synonymous with the factual scenario presented here, i.e., following issuance of a binding appraisal award and commencement of work authorized pursuant to that award, additional damage undiscoverable during the initial appraisal process and therefore not included in the binding appraisal award was revealed, and our independent research has likewise produced no legal authority precisely on point.

**{¶ 22}** One Church contends the material allegations set forth in its pleadings sufficiently assert that the Appraisal Award mistakenly failed to include all damages arising

out of the covered loss because some of the damages were unknown and undiscoverable at the time the initial appraisal was conducted and were not discovered until repairs authorized by the initial Appraisal Award were commenced. BMIC counters that review of One Church's pleadings reveals that its "***sole justification***" to set aside the Appraisal Award is that it was "***inadequate***" and that "[a]bsent from One Church's pleadings is any allegation that the Appraisal Award was entered as a result of fraud, mistake or misfeasance." (Emphasis sic.) (BMIC's Brief at 12.) As to One Church's assertion that the Appraisal Award should be set aside as a result of a "mistake," BMIC contends One Church failed to assert such claim with particularity as required by Civ.R. 9(B).

{¶ 23} We do not agree with BMIC's contentions. One Church alleged in its complaint that "[s]ince the loss, [BMIC] and [One Church] have engaged in extensive negotiations and proceedings to adjust the loss. These proceedings included the completion of the appraisal process provided for by the [P]olicy which resulted in a determination of an amount of loss for *known and discoverable damages at the time the process was completed.* Following the payment of the amount of loss determined through the appraisal process, *additional hidden damages were discovered.*" (Emphasis added.) (Compl. at ¶ 11.) One Church further alleged that despite notifying BMIC of these additional damages, BMIC refused to investigate or otherwise consider the additional damages and "denied owing any further amount to [One Church]." (Compl. at ¶ 11.) While One Church did not specifically utilize the term "mistake" in its pleadings, we find that One Church's complaint pleaded mistake with sufficient particularity to satisfy Civ.R. 9(B).

{¶ 24} Moreover, One Church is not alleging the initial Appraisal Award should be set aside because it is "inadequate." To the contrary, One Church expressly asserts that it is "not seeking to refute [the] [A]ppraisal [A]ward for what it was, an assessment of damages caused by the loss that the appraisers were able to identify." (One Church's Brief at 13.) Instead, One Church alleges there is *additional* loss that could not have been known to either party's appraiser at the time of the initial appraisal. One Church contends that "the [Appraisal Award] failed to set [forth] the full value of One Church's loss sustained in the covered clause due to BMIC's refusal to reopen the appraisal process and allow One Church to fully present all of its damages." (One Church's Brief at 13.)

{¶ 25}   In granting the motion for judgment on the pleadings, the trial court made a finding that it "does not find any evidence of * * * mistake." (Decision at 4.)  Applying the standard for a motion for judgment on the pleadings, we must construe as true all the material allegations in the complaint, with all reasonable inferences to be drawn therefrom in favor of One Church.  Therefore, we must accept as true that the appraisal process resulted in a determination of loss for known and discoverable damages at that time and subsequently additional hidden damages were discovered.  Furthermore, from this allegation, the inference that a mistake as defined in Ohio law was made during the appraisal process must be drawn in favor of One Church at this early stage.  Therefore, One Church should be permitted to proceed with the litigation as the pleadings do not establish beyond doubt that One Church could prove no set of facts in support of its claim that would entitle it to relief.  Because the trial court concluded otherwise, we sustain One Church's single assignment of error.

## IV.  Conclusion

{¶ 26}  Having sustained One Church's single assignment of error, the judgment of the Franklin County Court of Common Pleas is hereby reversed, and the matter is remanded to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment reversed and*
*cause remanded.*

EDELSTEIN and LELAND, JJ., concur.