[Cite as *Kean v. Cincinnati Ins. Co.*, 2021-Ohio-490.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Bradley Kean, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 20AP-177 |
| v. | : | (C.P.C. No. 19CV-3186) |
| The Cincinnati Insurance Company, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on February 23, 2021

**On brief:** *Steven E. Hillman,* for appellant. **Argued:** *Steven E. Hillman.*

**On brief:** *David J. Heinlein,* for appellee. **Argued:** *David J. Heinlein.*

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Plaintiff-appellant, Bradley Kean, appeals from the February 28, 2020 decision and entry issued by the Franklin County Court of Common Pleas granting the motion for summary judgment of defendant-appellee, The Cincinnati Insurance Company ("CIC"), and dismissing appellant's complaint with prejudice. For the following reasons, we affirm.

I. **Facts and Procedural History**

{¶ 2} The salient facts of the instant matter are undisputed and evinced in the record as follows. CIC issued a homeowners' insurance policy (the "Policy") to Kean which covers his residence in Canal Winchester, Ohio. (Apr. 16, 2019 Compl. at ¶ 2.) Kean testified at his deposition that in July 2018, he became aware of water damage to his home after he

had a fence installed which was attached to the rear of the home. (Kean Depo. at 7.) Kean initiated a claim under his Policy, which was investigated by CIC's claims adjustor, Tod Felton ("Felton"). (Felton Aff. at ¶ 3-4.)

{¶ 3} Felton inspected the home and attendant damage on several occasions and determined that the affected corner of the home exhibited wet-rot damage, apparently from water that had been going behind the siding, i.e., between the interior wall and the outside siding. (*Id.* at ¶ 3-4; 6-10.) On Felton's first visit to the home, he made Kean aware of the Policy's limitation on "Fungi, Wet-Rot and Dry-Rot" coverage, which was $10,000. (*Id.* at ¶ 4; *see also* Policy, Endorsement HR 929.)

{¶ 4} Ultimately, CIC paid Kean $17,617.48, less the $1,000 deductible under the Policy, which included $10,000 for the wet-rot damage plus $7,617.48 in damage to personal property. (Felton Aff., at ¶ 10-13.) Kean submitted a Sworn Statement in Proof of Loss which acknowledged the foregoing, including the fact that the origin of the loss was due to "Water, Fungi, Wet/Dry Rot." (Felton Aff., Ex. C-2; Kean Depo. at 13.)

{¶ 5} Subsequently, on April 16, 2019 Kean filed a complaint in which he asserted three claims: 1) breach of contract; (2) bad faith; and (3) intentional infliction of emotional distress. (*See* Compl.) CIC filed its answer on May 15, 2019 and the parties proceeded with discovery.

{¶ 6} On January 21, 2020, CIC filed a motion for summary judgment. On February 12, 2020, the trial court ordered additional briefing on the claim for intentional infliction of emotional distress. Subsequently, on February 28, 2020, the trial court granted summary judgment in favor of CIC on all three of Kean's claims. (Feb. 28, 2020 Decision & Entry.)

{¶ 7} This timely appeal followed.

## II. Assignments of Error

{¶ 8} Appellant assigns three errors for our review:

> [I.] The Trial Court failed to appropriately apply Civ.R. 56 when granting the Appellee's Motion for Summary Judgment.

> [II.] When the Appellee choose [sic] not to inspect the building as required by R.C. 3929.25 and continued to insure the dwelling and collect its premiums for the same values as before

the claim it cannot raise construction defects that would have existed at the time the original policy was issued and the defense of a construction defect and any visible defect is waived.

[III.] Because the doctrine of Waiver is potentially involved in this case, this is a question for a Jury and is not subject to Summary Judgment.

## III. Discussion and Legal Analysis

### A. Standard of Review

{¶ 9} An appellate court reviews summary judgment under a de novo standard. *You v. Northeast Ohio Med. Univ.*, 10th Dist. No. 17AP-426, 2018-Ohio-4838, ¶ 16, citing *Brisco v. U.S. Restoration & Remodeling, Inc.*, 10th Dist. No. 14AP-533, 2015-Ohio-3567, ¶ 19, citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995). Summary judgment is proper only when the parties moving for summary judgment demonstrate: (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds viewing the evidence most strongly in favor of the nonmoving party could reach but one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56; *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181 (1997).

{¶ 10} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact by pointing to specific evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies its initial burden, summary judgment is appropriate unless the nonmoving party responds, by affidavit or as otherwise provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Id*; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle,* 75 Ohio App.3d 732, 735 (12th Dist.1991).

{¶ 11} A fact is "material" if it "might affect the outcome of the suit under the applicable substantive law." *Mitchell v. Mid-Ohio Emergency Servs., L.L.C.*, 10th Dist. No.

03AP-981, 2004-Ohio-5264, ¶ 12.  A "genuine" issue of material fact exists to prevent summary judgment only if "a reasonable jury could find that the evidence satisfies the evidentiary standards required at trial."  *Myocare Nursing Home, Inc. v. Fifth Third Bank*, 98 Ohio St.3d 545, 2003-Ohio-2287, ¶ 33.  Additionally, a nonmovant's own self-serving assertions, whether made in an affidavit, deposition or interrogatory responses, cannot defeat a well-supported summary judgment when not corroborated by any outside evidence.  *White v. Sears, Roebuck & Co.*, 10th Dist. No 10AP-294, 2011-Ohio-204, ¶ 7.

{¶ 12}  Finally, "[t]rial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party."  *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993), citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992). "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the party opposing the motion." *Hannah v. Dayton Power & Light Co.*, 82 Ohio St.3d 482, 485 (1998), citing *Turner v. Turner*, 67 Ohio St.3d 337, 341 (1993).

## B.  Appellant's First Assignment of Error

{¶ 13}  In his first assignment of error, Kean asserts that the trial court erred by failing to appropriately apply Civ.R. 56 in granting CIC's motion for summary judgment. We disagree.

{¶ 14}  " 'An insurance policy is a contract whose interpretation is a matter of law.' " *Laboy v. Grange Indemn. Ins. Co.*, 144 Ohio St.3d 234, 2015-Ohio-3308, ¶ 8, citing *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, ¶ 6.  When interpreting an insurance policy, the fundamental goal is to ascertain the intent of the parties.  *Id.*, citing *Burris v. Grange Mut. Cos.*, 46 Ohio St.3d 84, 89 (1989).  The intent of the parties is ascertained by reading the policy in its entirety and settling upon " 'reasonable interpretation of any disputed terms in a manner designed to give the contract its intended effect.' "  *Id.* "Words and phrases must be given their plain and ordinary meaning 'unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.' "  *Id.*, citing *Alexander v. Buckeye PipeLine Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus.

{¶ 15} The Supreme Court of Ohio has held that "provisions in an insurance contract that are reasonably susceptible of more than one interpretation will be construed liberally in favor of the insured." *Laboy* at ¶ 9, citing *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208 (1988), syllabus (further citation omitted.) Nevertheless, this rule " 'will not be applied so as to provide an unreasonable interpretation of the words of the policy.' " *Id.*, citing *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St.3d 306, 2007-Ohio-4917, ¶ 8, citing *Morfoot v. Stake*, 174 Ohio St. 506 (1963), paragraph one of the syllabus.

{¶ 16} When the parties to a contract disagree on the meaning of the language in the contract, a court "must first look to the four corners of the document to determine whether an ambiguity exists." *Antonucci v. Ohio Dept. of Taxation*, 10th Dist. No. 09AP-629, 2010-Ohio-3326, ¶ 8, citing *Buckeye Corrugated, Inc. v. DeRycke*, 9th Dist. No. 21459, 2003-Ohio-6321. Where the terms of a contract are clear and precise, the contract is not ambiguous, and a court is not permitted to refer to any evidence outside of the contract itself. *Id.*, citing *Ryan v. Ryan*, 9th Dist. No. 19347 (Oct. 27, 1999). Furthermore, when a written instrument is unambiguous, parol evidence will not be considered in an attempt to demonstrate an ambiguity that otherwise does not exist. *Id.*, citing *Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St.3d 635, 638 (1992), citing *Stony's Trucking Co. v. Pub. Util. Comm.*, 32 Ohio St.2d 139, 142 (1972).

{¶ 17} Additionally, it is well-established that, when opposing a motion for summary judgment, "the evidence necessary to create a genuine issue of material fact must be more than just bare, unsupported assertions" and that "a 'party's unsupported and self-serving assertions, offered by way of affidavit, standing alone and without corroborating materials under Civ.R. 56, will not be sufficient to demonstrate material issues of fact.' " *Eichenberger v. Tucker*, 10th Dist. No. 12AP-515, 2013-Ohio-805, ¶ 9, quoting *Hillstreet Fund III, L.P. v. Bloom*, 12th Dist. No. CA2009-07-178, 2010-Ohio-2961, ¶ 10, citing *TJX Cos., Inc. v. Hall*, 183 Ohio App.3d 236, 2009-Ohio-3372 (8th Dist.), ¶ 30; *see also Pinchot v. Mahoning Cty. Sheriff's Dept.*, 164 Ohio App.3d 718 (7th Dist.), ¶ 24, (generally, self-serving affidavits cannot be used by the nonmoving party to survive summary judgment). "Otherwise, a party could avoid summary judgment under all circumstances solely by simply submitting such a self-serving affidavit." *Bell v. Beightler*, 10th Dist. No. 02AP-569, 2003-Ohio-88, ¶ 33. Thus, a party's self-serving affidavit which

purports to attest to the terms of a contract and the meaning of those terms may not be considered by a court reviewing a motion for summary judgment where the contract's terms are clear and unambiguous.

{¶ 18} Section I.A.5.m.(1) of the Policy, titled "Fungi, Wet or Dry Rot, or Bacteria," provides in pertinent part:

> The amount shown in the Section 1 – Fungi, Wet or Dry Rot or Bacteria – Limit of Insurance Schedule is the most "we" will pay at each "location" under this Additional Coverage during the "coverage term"[.]

(Policy, Section I.A.5.m.(1).)  The term "location" is specifically defined under the Policy as "the 'residence premises,' " with "residence premises" being further defined as "the one or two family dwelling where 'you' reside."  (*Id.*, Definitions, 15.a. and 24.a.)  In turn, Section 1 – Fungi, Wet or Dry Rot, or Bacteria – Limit of Insurance Schedule (the "HR 929 Endorsement") specifies the limit of insurance for this coverage is $10,000.  (*Id.*, HR 929.)

{¶ 19} We find that the language of the policy clearly and unambiguously establishes that CIC's obligation to reimburse Kean for damages to his residence caused by fungi or wet rot is limited to a maximum of $10,000.  We further agree with the trial court that all admissible evidence in this case supports the finding that the damage to Kean's property is due to fungi or wet rot and that Kean has failed to submit any evidence to the contrary. Indeed, the evidence unequivocally shows the damage to Kean's residence is fungi and wet rot damage.  As noted above, Kean submitted a Sworn Statement in Proof of Loss to CIC acknowledging the damage to be "Water, Fungi Wet/Dry Rot" and testified at his deposition that he signed it.   (Felton Aff., Ex. C-2; Kean Depo. at 13.)  Tod Felton, CIC's claims adjustor assigned to Kean's claim, inspected the property and concluded the damage was the result of "repeated seepage or leakage of water, or the presence of moisture over a period of weeks, months, or years." (Felton Aff. at ¶ 15.)     CIC's expert, Eric R. Drozdowski, P.E., likewise determined the damage was "a result of repeated seepage or leakage of water or the presence of moisture over a period of weeks, months or years and as a result of degradation of the building envelope, poor construction techniques and/or poor maintenance of the home." (Drozdowski Aff. at ¶ 11.)

{¶ 20} Nevertheless, Kean argues in his brief that it was error for the trial court to have granted summary judgment in favor of CIC because there are at the very least issues of fact concerning whether the damage to Kean's residence is covered by the Policy. In support of this argument, Kean points to his own affidavit. Yet, as discussed above, a self-serving affidavit submitted by the nonmovant without corroborating materials admissible under Civ.R. 56 will not suffice to avoid summary judgment where the moving party has submitted a motion for summary judgment that is supported by admissible evidence. *Eichenberger* at ¶ 9. Kean has submitted no corroborating materials supporting any of the assertions made in his affidavit and as such cannot use it to show there are genuine issues of material fact in this case.

{¶ 21} Nor can Kean use his own affidavit to show the Policy means something other than what it clearly and unambiguously provides, which as we have already found is that CIC's obligation to Kean in this case is $10,000 for damage due to fungi and wet rot. The HR 929 Endorsement providing for coverage due to water damage from wet/dry rot clearly limits the maximum payment to $10,000 per "location," and "location" is defined in the Policy as "the residence premises." Thus, even if we were to consider Kean's interpretation of the Policy as set forth in his affidavit, "location" clearly refers to the house itself, *not* the location of each and every instance or area of water intrusion. In short, Kean's argument that he should be paid up to $10,000 for each area of water intrusion fails by virtue of the plain language of the Policy.

{¶ 22} The evidence in the form of Tod Felton's affidavit shows that Kean was paid $17,617.48, which consisted of $10,000 for the full Policy limits for "Fungi, Wet or Dry Rot, or Bacteria" plus $6,617.48 ($7,617.48 minus the $1,000 deductible) for damages to personal property. (Felton Aff. at ¶ 10-13.) Kean has provided no evidence to the contrary and indeed, does not dispute this proof. Thus, CIC fully met its obligation under the Policy and there are no genuine issues of material fact on this point.

{¶ 23} Therefore, we find the trial court did not err by failing to appropriately apply Civ.R. 56, and the trial court properly granted CIC's motion for summary judgment pursuant to Civ.R. 56(C). Accordingly, we overrule Kean's first assignment of error.

## C. Appellant's Second and Third Assignments of Error

{¶ 24} Kean's second and third assignments of error both concern his arguments predicated on waiver, and we therefore address them together. In these assignments of error, and although not clearly articulated, in essence Kean asserts the trial court erred in granting summary judgment to CIC when there was a genuine issue of material fact as to whether CIC had waived any potential defense that the damage to the property was caused by a construction defect, which would ostensibly relieve CIC of its duty to pay its insured pursuant to the Policy. These assignments of error have no merit.

{¶ 25} First, as argued by CIC and as the trial court properly found, R.C. 3929.25 is wholly inapplicable in this case. This statute applies only in cases where a building is insured "against loss or damage by fire or lightning." R.C. 3929.25. Neither of the parties in this case asserts this case involves damage due to fire or lightning. Indeed, as discussed previously, Kean submitted a Sworn Statement in Proof of Loss to CIC acknowledging the damage to be "Water, Fungi Wet/Dry Rot" and testified at his deposition that he signed it. (Felton Aff., Ex. C-2; Kean Depo. at 13.) Tod Felton, CIC's claims adjustor assigned to Kean's claim, inspected the property and concluded the damage was the result of "repeated seepage or leakage of water, or the presence of moisture over a period of weeks, months, or years." (Felton Aff. at ¶ 15.) Furthermore, even if this statute did apply, Kean's argument regarding "waiver" of a defense of construction defects is nonsensical. The statute makes clear that the inspection requirement is for the purpose of fixing a valuation of the property to be paid for a total loss due to fire, not to uncover construction defects for the purpose of preserving a future defense to payment under an insurance policy based on original construction defects.

{¶ 26} Moreover, in this case CIC has never asserted a "defense" based on underlying construction defects. To be sure, Eric R. Drozdowski, the engineer engaged by CIC as its expert after the suit was filed, opined that the water damage occurred, at least in part, due to construction defects. (Drozdowski Aff. at ¶ 11.) But this is merely an explanation of how the damage occurred, which is not directly relevant to what is payable under the Policy. As thoroughly discussed above, the Policy clearly limits payment for damage due to wet-rot to $10,000 without speaking to how the wet-rot came to occur, so it is of no matter whether or not it was caused by a construction defect.

{¶ 27} Second, regardless of the inapplicability of R.C. 3929.25, Kean is confusing the concept of a right to void a contract and/or deny an insurance claim made pursuant to an insurance policy, with the right to be obligated to pay out under the policy only in accordance with its terms, including its limitations and exclusions. Contrary to Kean's position, CIC did not attempt to "void" the Policy and did not "deny" the claim. Rather, CIC appropriately processed Kean's claim according to the limitations and exclusions set forth in the Policy.

{¶ 28} Lastly, although not specifically assigned as an error, as part of his discussion under the third assignment of error, Kean has also asserted there is an issue of fact regarding whether CIC acted in bad faith.[1] We do not agree. It is well-settled that "[b]ased upon the relationship between an insurer and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured. A breach of this duty will give rise to a cause of action in tort against the insurer." *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272 (1983), paragraph one of the syllabus. "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552 (1994), paragraph one of the syllabus.

{¶ 29} In this case, CIC had reasonable justification for its position that Kean was entitled only to $10,000 for the water damage pursuant to the terms of the Policy. Furthermore, Kean admitted in his deposition that Felton and CIC were responsive in investigating the claim. (Kean Depo. at ¶ 17.) There simply is no evidence of bad faith in this case; instead, the evidence shows CIC acted in good faith in investigating and paying Kean's claim. Therefore, CIC is entitled to judgment as a matter of law on Kean's claim for bad faith.

{¶ 30} In short, based on the foregoing, Kean's second and third assignments of error are meritless and are hereby overruled.

## IV. Disposition

---

[1] In his complaint, Kean had also asserted a claim for intentional infliction of emotional distress, and the trial court granted summary judgment on this claim as well as the claims for breach of contract and bad faith. Kean has assigned no errors based on his claim for intentional infliction, nor has he made any arguments on this point; accordingly, we presume he has abandoned this claim on appeal.

{¶ 31} For the foregoing reasons, the trial court did not err in granting CIC's motion for summary judgment pursuant to Civ.R. 56(C).  Having overruled appellant's first, second and third assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and LUPER SCHUSTER, JJ., concur.

———————————